IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TAMIKA W.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 3:22-cv-1529-HZ

OPINION & ORDER


HERNÁNDEZ, District Judge:

Plaintiff Tamika W. brings this action seeking judicial review of the Commissioner's final decision to deny her application for supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on July 24, 2019, alleging an onset date of January 1, 2018. Tr. 246-55.[2] Plaintiff's date last insured ("DLI") is December 31, 2023. Tr. 12. Her application was denied initially and on reconsideration. Tr. 10.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on heart conditions, anemia, migraines, gastrointestinal issues, respiratory conditions, a metabolic syndrome, and conditions affecting her knee, back and fibula. Tr. 113. At the time of her alleged onset date she was 31 years old. Tr. 239-46, 285. Plaintiff has a high school education and past relevant work experience as a fast food worker and tray worker. Tr. 24, 286.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ's DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 24, 2019, the application date. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "lumbar spine spondylosis, right knee meniscal tear status-post meniscectomy, history of ankle fracture with open reduction and internal fixation, asthma, anemia, fatty liver, obesity, and anxiety disorder." Tr. 15-16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. At step four, the ALJ concluded that Plaintiff has the residual

functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> she can stand and/or walk for two hours in an eight-hour workday; has no limitations on sitting; can frequently climb ramps and stairs; should not climb ladders, ropes, or scaffolds; she should have use of a cane or walker for uneven surfaces (but no more than three times per week); should have no more than frequent exposure to airborne irritants (such as fumes, odors, dusts, gases, and poor ventilation); can understand and remember simple instructions; has sufficient concentration, persistence and pace to complete simple, routine tasks for a normal workday and workweek; should not do fast-paced production work; and can adapt to normal changes with one day advanced notice of those changes.

Tr. 18. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 24. At step five, the ALJ found that Plaintiff retained the capacity to perform other jobs in the national economy. Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole

can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

I. **Symptom Testimony**

Plaintiff argues that the ALJ erred in rejecting her symptom testimony. Pl. Br. at 15. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons

5 – OPINION & ORDER

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.")

At the hearing, Plaintiff shared that she could not work due to widespread pain and fatigue. Tr. 43. Fatigue and exhaustion would cause her to miss work, and she needed more breaks than typically allowed. Tr. 43. She was easily winded. Tr. 43. She lived with her four children, ranging in age from five to eleven. Tr. 40. The children's father provided care for them about three times a week. Tr. 53-54. Plaintiff does household chores like laundry and cooking, but testified that her oldest daughter does most of them. Tr. 47-48. Plaintiff drove two or three times a week. Tr. 41. She grocery shopped once a month using a motorized cart, and she had to spend the following day in bed. Tr. 48, 51-52. She walked from her house to the end of her cul-de-sac twice a month. Tr. 48-49. Her hobbies included watching television and coloring. Tr. 49. She watched movies with her children, played tablet games, and sat outside and watched her children play. Tr. 49. She wore a right knee brace all the time. Tr. 49-50. She experienced shooting pain in her right leg when she walked. Tr. 50. She used a walker at least three times a week. Tr. 49-50.

In a written function report, Plaintiff reported daily exhaustion, tingling and numbness in the arms and legs, back pain, and headaches. Tr. 297. She described fatigue and mobility problems that impacted her ability to perform personal care tasks and other activities of daily living. Tr. 298, 301. She used a cane because of right leg, ankle, and bilateral knee pain. Tr. 298, 302. Stress caused panic attacks. Tr. 302. She often became light-headed and "super tired" and forgetful. Tr. 303. She experienced good and bad days and "really ha[d] to take it day by day." Tr. 30.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 19. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 19. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical evidence, and that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 19.[3]

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

---

[3] Defendant adds the impermissible *post hoc* rationalization that the record showed Plaintiff "reported that she pursued disability benefits because she was 'tired of working' and that 'it was too much for her to work and take care of the kids while [her husband] is in school." Def. Br., ECF No. 17 at 4 (citing Tr. 645). The ALJ did not cite this page of the transcript, or make this inference. *See* Tr. 23. Because the Court is constrained to review "the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), the Court does not consider this argument.

Concerning Plaintiff's testimony about her fatigue and mobility problems, the ALJ reasonably discounted these allegations as inconsistent with the record. [4]Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that she had shooting pain and swelling in her right leg, and generally suffered from fatigue and difficulty moving. Tr. 48-50. As a result, Plaintiff alleged that she needed frequent breaks during the work day, and had difficulty completing personal care tasks and other activities of daily living. Tr. 43, 298, 301. The ALJ juxtaposed these allegations with evidence from medical appointments throughout the relevant period that showed Plaintiff had full strength in all muscle groups (Tr. 20, citing Tr. 1309, 2065), and normal gait and balance. Tr. 19-20 (citing Tr. 571, 1547, 1582). The ALJ acknowledged that Plaintiff sometimes exhibited irregular gait, but incorporated that limitation into the RFC's light exertional level with allowance for breaks every two hours. Tr. 23. The ALJ further noted that, while Plaintiff needed a cane to help her walk, it was not a permanent assistive device, and Plaintiff used a walker at most three times a week. Tr. 24 (citing Tr. 302). These several data points showing Plaintiff's full strength and normal gait conflicted with Plaintiff's testimony and provided substantial evidence to support the ALJ's decision to discount Plaintiff's testimony about the extent of her fatigue and mobility issues.

---

[4] The ALJ also discounted Plaintiff's testimony about fatigue and "get[ting] winded" with evidence that she did not suffer asthma exacerbations during the relevant period. Tr. 24. Plaintiff does not contest this basis in her brief beyond the general argument that the ALJ failed to discount her testimony with sufficient specificity. Pl. Br., ECF No. 15 at 8-9 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). The ALJ adequately explained her reasoning, however, detailing how she "account[ed] for [Plaintiff's] asthma" in the RFC with limitation on exposure to pulmonary irritants (Tr. 23), but allegations of more significant fatigue or shortness of breath were not supported by the record. Tr. 24 (noting that "evidence of record…do[es] not support any greater restrictions," in part because Plaintiff "did not have any asthma exacerbations during the relevant period").

8 – OPINION & ORDER

Plaintiff argues that the ALJ failed to address her testimony with sufficient specificity and that her general discussion of the medical record omitted many documents that support her testimony. ALJs need not "perform a line-by-line exegesis of the claimant's testimony," however. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020)). Even when an agency "explains its decision with 'less than ideal clarity," we must uphold it "if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121. In addressing Plaintiff's testimony regarding right leg pain, mobility and fatigue, the ALJ cited medical evidence that indicated Plaintiff was more capable than she alleged. Tr. 22-24. The ALJ did not totally throw this testimony out the window, but reasonably discounted it in line with the limitations assessed in the RFC. *See* Tr. 18. The ALJ's reasoning in rejecting this testimony can be reasonably discerned. And as for the countervailing evidence the ALJ did not find persuasive, Plaintiff is asking the Court to re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—Plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, the ALJ reasonably relied on conflicting medical evidence, and did not err in discounting Plaintiff's testimony about fatigue and mobility.

*B. Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 21. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the

activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that Plaintiff's exercise regimen conflicted with her testimony about physical limitations and fatigue. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ contrasted Plaintiff's testimony about leg pain and fatigue (Tr. 43-49) with records showing that Plaintiff went to the gym at least three times each week to lift weights and perform aerobic exercises, and reported she could exercise for over an hour on a treadmill or stationary bicycle. Tr. 20, 740, 764, 917. In fact, Plaintiff reported that, although she used an inhaler prior to her workouts, she could withstand these activities "as well as she had in the past" Tr. 740, 764, 917. She also reported she averaged around 5,000 steps per day. Tr. 1396. The ALJ also noted that Plaintiff traveled out of state to attend weddings, went out with her friends, and independently handled most of her daily activities, which included caring for four young children and regularly volunteering at their school. Tr. 20, 23, 925, 1582, 1606, 1652.[5] This evidence undermined Plaintiff allegations that

---

[5] Plaintiff contends there is not any evidence that Plaintiff performed any volunteer activity during the relevant period. Pl. Br. at 12. At a September 25, 2019 medical appointment, however, Plaintiff related that she volunteers at school Monday-Friday to "stray [sic] busy and off the couch." Tr. 925.

fatigue and mobility issues made her unable to work. This was another clear and convincing reason for the ALJ to rely upon to discount Plaintiff's testimony.

## II. Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in rejecting the disability opinion of Physician's Assistant Jason Taylor, PA-C. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

PA Taylor began treating Plaintiff in October 2017. Tr. 2074. In June 2021, he reported in a written statement that he saw Plaintiff once or twice every three months. Tr. 2074. Plaintiff's

11 – OPINION & ORDER

diagnoses included cardiomyopathy, asthma, anemia, sleep apnea, right knee osteoarthritis, chronic low back pain, and chronic headache. Tr. 2074. Her symptoms included fatigue, intermittent shortness of breath and wheezing, right knee pain, antalgic gait, low back pain, and exercise intolerance. Tr. 2075. Relevant clinical findings included anemia, antalgic gait, musculoskeletal complaints, right knee pain, and hypertonicity L5 muscle. Tr. 2075. Her treatment included prescription medication, injections, surgery, echo, stress test, and a sleep study. Tr. 2076.

PA Taylor opined that Plaintiff had to take a thirty- to forty-minute nap daily. Tr. 2075. She was able to walk one city block without rest or significant pain. Tr. 2076. She could sit for fifteen minutes at a time and three hours total in an eight-hour workday. Tr. 2076. She could stand/walk for fifteen minutes at a time and two hours total in an eight-hour workday. Tr. 2076. She needed a job that permitted shifting positions at will from sitting, standing, and walking. Tr. 2076. She would need to take a ten- to fifteen-minute unscheduled break every forty-five to sixty minutes during an eight-hour workday. Tr. 2077. She could lift/carry twenty pounds occasionally and less than ten pounds frequently. Tr. 2077. She would be absent more than four workdays per month. Tr. 2078.

The ALJ supported her rejection of PA Taylor's opinions about Plaintiff's ability to sit for only three hours, need for unscheduled breaks, and excessive workplace absences with substantial evidence. Tr. 23. ALJs must consider both the consistency and supportability of medical opinions when evaluating them. 20 C.F.R. §§ 404.1520c(c)(1-2), 416.920c(c)(1-2). Inconsistency with the record and internal inconsistency are sufficient reasons to find a medical opinion unpersuasive. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ found PA Taylor's conclusions were inconsistent with the record, and were unsupported by

his own treatment observations. Tr. 23. For example, the ALJ noted that PA Taylor's treatment and observations reasonably supported his limitations on Plaintiff's ability to walk and lift weights over twenty pounds, but did not connect to his conclusions about a limitation on amount of time sitting down, or need for excessive breaks or absences from work. Tr. 23 (citing Tr. 2075). In fact, the record evidence was inconsistent with these conclusions. As the ALJ noted, Plaintiff went to the gym regularly and cared for her four young children. She also went to the park with her children, watched movies with them, and testified to sitting down for long periods of time without needing a nap or being limited to sitting for three hours. Tr. 20-23 (citing Tr. 740, 764, 917, 925). PA Taylor's limitations on Plaintiff's ability to sit and need for excessive breaks or absences also conflicts with other medical opinions in the record, like Dr. Wiggins', which Plaintiff does not challenge. Tr. 22. The ALJ adequately considered the supportability and consistency of PA Taylor's opinion by examining the bases for his conclusions, their consistency with the record and discounting them for their inconsistency and lack of thoroughness.

      Plaintiff argues the that the record weighs more heavily in favor of PA Taylor's conclusions. Plaintiff specifically argues that her activities do not in fact undermine PA Taylor's opined limitations on her ability to sit or attend work regularly without excessive, unscheduled breaks. Pl Br., ECF No. 15 at 16-17. But the ALJ's inferences from the record are at least reasonable, if not compelling. For example, Plaintiff testified that her leisure activities are "watch[ing] movies with my kids, play[ing] a tablet game" and sitting in a chair watching her children play in the front yard. Tr. 49. During the relevant period she also spent time volunteering at her children's school Monday through Friday, and exercised for an hour a day three times a week. Tr. 49. These all undermine PA Taylor's conclusions, and the ALJ cited these activities in finding PA Taylor's opinion unpersuasive. Tr. 23. Ultimately, it is not this

13 – OPINION & ORDER

Court's job to consider afresh how much weight each individual piece of medical evidence ought to have. Instead, the Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ"). Although Plaintiff clearly interprets the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the weight that ought to be afforded certain evidence. The ALJ sufficiently supported her decision to find PA Taylor's opinions about Plaintiff's inability to sit for longer than three hours and need for excessive breaks unpersuasive, and did not err.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED:_____April 12, 2024_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

14 – OPINION & ORDER